UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WILLIAM L. EDWARDS,                                      :
                    Plaintiff,          :
v.                                                       :                    Copy mailed by Chambers 3-20-19 DH
                                                         :
ANTHONY J. ANNUCCI; KAREN                                :          **OPINION AND ORDER**
BELLAMY; ADA PEREZ; LT. HENRY M.                         :
DANIELS; LT. K. COFFEY; SGT. P. TURSO;                   :          17 CV 5018 (VB)
C.O. SMITH; C.O. S. GARCIA; C.O.                         :
JACKSON; R.N. NGUYEN; and C.O. A.                        :
ARGIBAY,                                                 :
                   Defendants.          :
-----------------------------------------------------------------x

Briccetti, J.:

       Plaintiff William L. Edwards, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against defendants Anthony J. Annucci, Acting

Commissioner of the New York State Department of Corrections and Community Supervision

("DOCCS"); Karen Bellamy, Director of the DOCCS Inmate Grievance Program; Ada Perez,

Superintendent ("Supt.") of Downstate Correctional Facility ("Downstate"); Lieutenant ("Lt.")

Henry M. Daniels; Lt. K. Coffey; Sergeant ("Sgt.") P. Turso; Correction Officer ("C.O.") Smith;

C.O. S. Garcia; C.O. Jackson; Correctional Nurse Nguyen; and C.O. A. Argibay.  Plaintiff

asserts claims against (i) Argibay for excessive force; (ii) Garcia, Turso, Smith, and Jackson for

failure to intervene; (iii) all defendants for conspiracy; and (iv) Argibay for denying plaintiff

access to the courts.  Plaintiff also alleges violations of Title II of the Americans with Disabilities

Act ("ADA"); Article I of the New York State Constitution; and state law claims for assault and

battery and both negligent and intentional infliction of emotional distress.[1]

---

[1]     The amended complaint also invokes the Fifth and Ninth Amendments.  (See Am. Compl. at 39).  The Fifth Amendment applies to the federal government, not New York State, and the Ninth Amendment plainly has no application in this case.  Thus, the Court dismisses any Fifth or Ninth Amendment claims the amended complaint may be liberally construed to assert.

Now pending is defendants' partial motion to dismiss the amended complaint pursuant to Rules 8(a)(2), 10(b), and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. #67).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and its exhibits and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff was a convicted inmate at Downstate at all relevant times. He alleges he is physically disabled, having "a short, deformed right arm with a drop wrist from nerve damage from previous physical trauma." (Am. Compl. at 9).[2]

I.     Plaintiff's Alleged Conflict with C.O. Argibay and Alleged Beating

Plaintiff claims defendants conspired to use, used, and then covered up the use of excessive force to retaliate against plaintiff for saying he planned to file a grievance against C.O. Argibay, who allegedly lied to plaintiff about a policy governing access to Downstate's law library. Specifically, plaintiff claims Argibay enforced "an unwritten, and false rule, regulation, policy, procedure, directive and corrections law" barring inmates from accessing Downstate's law library until five business days after their arrival. (Am. Compl. at 5). Plaintiff alleges such a regulation either did not exist or existed but Argibay misinterpreted it.

On June 26, 2014, plaintiff alleges C.O. Garcia eavesdropped on a conversation during which plaintiff told another prisoner he planned to file a grievance against Argibay for denying

---

[2]     Citations to "Am. Compl. at ___" reference page numbers assigned by the Court's Electronic Case Filing system.

plaintiff access to the law library. Plaintiff claims Garcia told Argibay about plaintiff's remark, allegedly knowing Argibay would physically abuse plaintiff in response. Moreover, plaintiff alleges Garcia admitted to eavesdropping on plaintiff and knowing about his plan to grieve Argibay—at around 11:30 a.m. that day, Garcia allegedly warned plaintiff, "Hey Edwards, you talk to[o] loud, you should have kept it to yourself." (Id. at 20).

A short time later, plaintiff allegedly heard Argibay tell Garcia, "I'm going to straighten that motherfucker out, watch and see." (Am. Compl. at 5). Argibay also allegedly told Garcia he would show Garcia "how to straighten a fucking asshole out the old school way," and to "watch [Argibay's] back for other inmate[s] and white shirts" while he did so. (Id. at 6). Plaintiff claims he also overheard Argibay tell Sgt. Turso on the phone, "Hey Sarge, I got a fucking asshole, whose a old timer who wants to fucking grieve me about me lying to him about the fucking law library. I want to straighten his fucking ass out the old school way, you don't grieve [officers] or else you get this." (Id. at 5–6).

At around 12:25 p.m. that day, plaintiff alleges Turso "orchestrat[ed] a frivolous [block-wide] pat-frisk to separate and isolate the plaintiff" in a secluded area away from other prisoners and employees. (Am. Compl. at 22). Plaintiff alleges Turso then ordered C.O. Smith and C.O. Jackson "to stand security guard for" Turso and Argibay. (Id. at 7).

Plaintiff alleges an officer ordered plaintiff to stand against a wall while the officer patted down an inmate standing next to plaintiff. When plaintiff assumed "the pat-frisk stance as directed," Argibay allegedly grabbed the back of plaintiff's shirt "without being provoke[d]" and "viciously drove the plaintiff into the wall," repeatedly slamming his body and the right side of his head into the wall. (Id. at 6–7). Argibay allegedly said, "You got something to say, motherfucker? Say something now, motherfucker! Are you going to file a grievance against me,

motherfucker?" (Id.at 7).  Argibay then purportedly "use[d] his left fore-arm to hold the plaintiff

in place, while he . . . punched the plaintiff in the face approximately three to four times with a

closed, right-hand fist on the plaintiff's left jaw area," yelling, "You are the trouble maker of the

block . . . !  You like grieving, motherfucker?  You've been through here numerous of times and

you still haven't learned!  You don't grieve [officers] or else you get this!  I'm the motherfucker

who runs the block, that's who I am, and the motherfucker [who's] going to straighten your ass

out.'" (Id. at 7–8).

Turso, who allegedly "masterminded" the incident (Am. Compl. at 22), then

"tapped . . . Argibay's left elbow, and said, 'That's enough'" (id. at 9).

Plaintiff alleges no defendant present "tr[ied] to intervene, stop, or prevent [the] physical

attack from happening," and that defendants conspired to harm plaintiff and were complicit in

his beating.  (Am. Compl. at 8).  Specifically, plaintiff alleges Turso witnessed the incident while

laughing to himself, taking no action to stop it; Garcia laughed while watching the incident and

did nothing to intervene; and Smith and Jackson witnessed the attack but did not get involved,

despite that Jackson was standing "[two] to four feet away."  (Pl. Opp. Br. at 11).  Plaintiff also

claims Smith and Jackson "just stood idly while the plaintiff was being physically abuse[d] in

their [presence]" (id. at 11), and that Garcia also "stood idle" throughout (id. at 40).

After the alleged assault, plaintiff claims Argibay said twice, "Nothing happened here.

Right, Edwards?"  (Am. Compl. at 9).  Plaintiff says he interpreted these comments as warnings

not to tell anyone about the beating.

Plaintiff allegedly asked Turso to take plaintiff to the Downstate medical clinic after the

beating.  Turso allegedly responded, "Well kid, suck it up it happens, you shouldn't grieve him,

but that's between you and him."  (Am. Compl. at 11).  Plaintiff also asserts he gave a sick call

slip to a non-party correction officer who refused to submit it. (Id. at 32). Plaintiff claims Turso denied plaintiff's requests for medical care a second time before eventually bringing plaintiff to the clinic.

At the clinic, Turso allegedly told Nurse Nguyen "in front of the plaintiff not to medically document the plaintiff's physical injuries . . . and to cover-up" the alleged assault. (Am. Compl. at 10). An "Inmate Injury Report," dated June 26, 2014, and apparently signed by Nurse Nguyen, states, "No visual injury noted. No swelling – no bleeding noted. Inmate able to talk. No limitation." (Pl. Opp. Br. at 60). Plaintiff claims Turso and Nguyen conspired to conceal the assault.

Plaintiff alleges he refused to return to his housing block after the assault and told Turso plaintiff's "life [was] in danger"; he "fear[ed] for his life, safety, and physical well being" around Turso, Garcia, and Argibay; and he would rather be in protective custody than return to his housing block. (Am. Compl. at 11). In response, Turso, with Lt. Daniels's authorization, transferred plaintiff to a new housing block that day. Plaintiff asserts Turso and Daniels agreed to transfer plaintiff because Argibay "in fact physically abuse[d]" him. (Pl. Opp. Br. at 13).

II.     Plaintiff's Grievance and Complaints

Plaintiff alleges he sent Supt. Perez a "complaint letter" describing the assault. (Pl. Opp. Br. at 16). Perez allegedly forwarded the letter to a non-party investigator without sending plaintiff a response.

Plaintiff also allegedly submitted a formal grievance to Perez complaining of Turso, Garcia, and Argibay's misconduct. Plaintiff accuses Argibay, Garcia, Turso, and Daniels of responding to that grievance by submitting memoranda containing false denials and other false information about the incident. Among other things, plaintiff alleges Garcia lied that she did not

know plaintiff planned to grieve Argibay, despite that plaintiff told Garcia before the assault that plaintiff planned to file a grievance, and that Garcia documented in a log book plaintiff's visit to the grievance committee on the morning of the assault.  Plaintiff also claims Coffey falsely reported that a witness to the assault told Coffey the "witness didn't see anything because he was facing the wall[,] but he heard someone yelling," when in fact the witness both saw and heard the assault.  (Pl. Opp. Br. at 14).  Plaintiff further alleges Coffey participated in the conspiracy to cover up the beating by receiving other defendants' "false [documents]."  (Am. Compl. at 26).

Perez denied plaintiff's grievance.  In so doing, she allegedly failed to discipline Turso, Garcia, and Argibay and "condoned and sanction[ed]" their use of excessive force.  (Id. at 16).  Plaintiff claims Perez's denial of the grievance indicates she conspired with other defendants to cover up the beating.

Plaintiff appealed the grievance denial to the inmate grievance program's Central Office Review Committee ("CORC").  In a decision allegedly signed by defendant Bellamy, CORC substantively upheld Perez's denial of the grievance.  Plaintiff then allegedly wrote a letter to Annucci concerning the processing of plaintiff's grievance.  Bellamy responded in a letter explaining "CORC is the final appellate level of the inmate grievance program."  (Am. Compl. at 36).

Plaintiff also alleges he sent complaint letters to Annucci and Bellamy, but neither Annucci nor Bellamy took any action in response.

In July 2015, plaintiff mailed a letter to the superintendent of the New York State Police.  The superintendent forwarded plaintiff's letter to the Inspector General's office.  (See Pl. Opp. Br. at 83).  Plaintiff alleges an "office of special investigation" eventually opened an

investigation in November 2016 that remained ongoing when plaintiff filed the amended complaint.  (Am. Compl. at 34).

III.        Alleged Practices or Policies

Plaintiff alleges two unconstitutional practices or policies at Downstate.

The first is a five-day waiting period for newly arrived inmates to access Downstate's law library, allegedly aimed at denying inmates access to the courts.  Plaintiff claims this policy is unwritten and "not posted within the facility as it should be."  (Am. Compl. at 8).  At the same time, the amended complaint alleges the existence of a written policy—Directive #4009, Section VII.C—which allegedly states, "An inmate, new arrived at a correctional facility, will not be permitted out-of-[cell] activities, until it is [reasonably] concluded that he/she has no known enemies at the facility.  This restriction shall not exceed five (5) days, unless extenuating circumstances exist."  (Id. at 31–32).

The second alleged policy—what plaintiff calls the "'blue wall' policy" (Am. Compl. at 28)—purportedly is an "unwritten policy to utilize unjustified and unnecessary excessive . . . physical force against [prisoners] who utilize the grievance mechanism against any security personnel within the prison."  (Id. at 21).  Plaintiff claims Annucci was "fully aware of" and failed to investigate "the brutal and barbaric physical force" used by "security personnel" pursuant to this alleged policy.  (Id. at 17).  Plaintiff further alleges Perez "allow[ed] her security personnel to [uphold] the unwritten . . . 'blue wall' policy" (id. at 28), and that Turso permitted Argibay to uphold "a tradition" at Downstate of physically retaliating against prisoners who file grievances against correction officers (id. at 17).

**DISCUSSION**

I.    <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

The Court must liberally construe a <u>pro se</u> litigant's submissions and interpret them "to raise the strongest arguments that they <u>suggest</u>." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a <u>pro se</u> plaintiff alleges a civil rights violation. <u>See</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a <u>pro se</u> case, however, . . . threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." <u>Chavis v. Chappius</u>, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court

"invent factual allegations" a plaintiff has not pleaded.  <u>Id</u>.

II.     <u>Rules 8(a)(2) and 10(b)</u>

Defendants argue the Court should dismiss the amended complaint for failure to comply

with Rules 8(a)(2) and 10(b).

The Court disagrees.

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  Rule 8 also states "[n]o technical form is required," Fed. R. Civ. P. 8(d)(1), and instructs

that "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e).  The statement of

the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks

omitted).  The statement should be plain "so as to enable [the adversary] to answer and prepare

for trial."  <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988).  Dismissal for failure to comply

with Rule 8 "is usually reserved for those cases in which the complaint is so confused,

ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."

<u>Id</u>.

Rule 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited

as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  "Where the absence

of numbering or succinct paragraphs does not interfere with one's ability to understand the

claims or otherwise prejudice the adverse party, the pleading should be accepted."  <u>Phillips v.</u>

Girdich, 408 F.3d 124, 128 (2d Cir. 2005).  Moreover, "even where a violation of Rule 10(b) is not harmless, dismissal is not typically the appropriate course of action."  Id.

While plaintiff's forty-one-page amended complaint is wordy and verbose, its length and structure does not render it incomprehensible or otherwise prejudice defendants such that dismissal is appropriate.  Rather, affording plaintiff the special solicitude due pro se litigants, the complaint narrates defendants' alleged actions with sufficient clarity for the reader to understand plaintiffs' factual allegations and legal claims.  Although the pleading's numbered paragraphs are long and unwieldy, often spanning multiple pages, this defect does not meaningfully prevent defendants from "answer[ing] or prepar[ing] for trial" in this case.  Salahuddin v. Cuomo, 861 F.2d at 42.

Accordingly, the Court declines to dismiss the amended complaint for failure to comply with Rule 8(a)(2) or Rule 10(b).

III.     Official Capacity Claims

Defendants argue plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment.

The Court agrees.

The Eleventh Amendment bars claims for money damages against individual state actors acting in their official capacities.  See Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  Accordingly, plaintiff's official-capacity claims for money damages are dismissed.

IV.    Personal Involvement

Defendants argue plaintiff's Section 1983 claims against Annucci, Bellamy, Perez, Coffey, Daniels, Garcia, Jackson, and Smith must be dismissed for failure plausibly to allege those defendants' personal involvement in a violation of plaintiff's constitutional rights.

The Court agrees as to Annucci, Bellamy, and Perez, but disagrees as to Coffey, Daniels, Garcia, Jackson, and Smith.

A defendant's personal involvement in an alleged constitutional deprivation "is a prerequisite to an award of damages under § 1983." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (internal citation omitted).  Section 1983 liability thus cannot be predicated on a theory of respondeat superior alone.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

A.    Annucci

Plaintiff fails plausibly to allege Annucci's personal involvement.

"The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim."  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  Rather, to state a supervisory liability claim under Section 1983, a plaintiff must adequately plead "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," created a policy or custom under which a constitutional violation occurred, acted with gross negligence in supervising subordinates, or "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  Id. at 873.[3]

_____

[3]    District courts within this circuit are divided as to whether claims alleging personal involvement under some of these factors remain viable.  See, e.g., Doe v. New York, 97 F. Supp.

11

To adequately plead a policy or custom, a plaintiff must allege more than one instance of a constitutional violation.  See DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).  A plaintiff typically must also adequately plead similar incidents involving others.  See, e.g., Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 14 (2d Cir. 2015) (summary order) (affirming dismissal of Monell claim and noting, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident").[4]

Plaintiff predicates Annucci's personal involvement on his supervisory role at Downstate, alleging Annucci did not respond to plaintiff's letters notifying Annucci of constitutional violations, failed to act on information indicating that unconstitutional acts were occurring, and created or countenanced a policy or custom under which constitutional violations occurred.

These allegations do not plausibly support Annucci's personal involvement in a constitutional violation.  First, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."  Randle v. Alexander, 960 F. Supp. 2d 457, 478 (S.D.N.Y. 2013) (collecting cases).  Second, a supervisor cannot be held personally responsible for failing to remedy a constitutional violation that had already occurred, and was no longer ongoing, when the supervisor learned of it.  See, e.g., Hayes v. Dahkle, 2017 WL 9511178, at *14 (N.D.N.Y. Oct. 30, 2017); Harnett v. Barr, 538 F. Supp. 2d 511, 524

_____

3d 5, 11–12 (E.D.N.Y. 2015) (collecting cases).  The Second Circuit has yet to resolve this dispute.  Id.

[4]     Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

(N.D.N.Y. 2008).  And third, plaintiff fails to plead any specific facts supporting an alleged "blue wall" policy at DOCCS:  he does not allege any other instance in which he or any other DOCCS inmate was subjected to excessive force in retaliation for seeking to file a grievance.

Accordingly, the Court dismisses plaintiff's Section 1983 claims against Annucci for failure plausibly to allege Annucci's personal involvement.

B.      Bellamy and Perez

Plaintiff likewise fails adequately to plead the personal involvement of Bellamy and Perez, both of whom allegedly denied plaintiff's grievance.

Plaintiff filed his grievance after the alleged assault took place.  Thus, the grievance did not complain of a constitutional violation that remained ongoing when Bellamy or Perez denied the grievance.  Because a supervisor cannot be held liable for failing to remedy a constitutional violation that no longer is occurring when the supervisor learns of it, plaintiff's claims against Bellamy and Perez fail as a matter of law.  See Hayes v. Dahkle, 2017 WL 9511178, at *14; Harnett v. Barr, 538 F. Supp. 2d at 524.

Further, to the extent plaintiff's claims against Bellamy and Perez are based on those defendants' alleged failure to answer plaintiff's letters, a prison official's alleged failure to respond to an inmate's letter does not give rise to liability under Section 1983.  See Randle v. Alexander, 960 F. Supp. 2d at 478.

For all these reasons, the Court dismisses plaintiff's claims against Bellamy and Perez for failure to adequately plead those defendants' personal involvement.

C.      Coffey, Daniels, and Garcia

Plaintiff plausibly alleges Coffey, Daniels, and Garcia's personal involvement.

A prisoner's well-pleaded allegation that a defendant "fil[ed] a false report to his supervisors in order to cover up" constitutional violations will "give rise to a plausible inference" that the defendant "was personally involved in the purported constitutional violations." Randle v. Alexander, 960 F. Supp. 2d at 478.

Plaintiff alleges Coffey wrote and submitted a memorandum in response to plaintiff's grievance in which Coffey falsely reported that a witness to the assault did not see anything, and that Coffey "lied that he sp[oke] with all named staff." (Pl. Opp. Br. at 14). As for Daniels, plaintiff alleges Daniels falsely claimed in a memorandum responding to plaintiff's grievance that Daniels ordered plaintiff be seen by medical staff "within an hour of the alleged incident." (Am. Compl. at 29). And as to Garcia, plaintiff claims Garcia falsely stated in a memorandum that she did not know plaintiff planned to grieve Argibay. Plaintiff explicitly accuses Coffey, Daniels, and Garcia of filing these allegedly false reports in an effort to cover up the beating. (Pl. Opp. Br. at 12, 15).

Taking these allegations as true, as the Court must at this stage of the case, they suffice plausibly to allege Coffey, Daniels, and Garcia filed false reports in hopes of concealing the alleged assault.

Accordingly, plaintiff adequately pleads Coffey, Daniels, and Garcia's personal involvement.

D.  Jackson and Smith

Plaintiff adequately pleads Jackson and Smith's personal involvement.

Plaintiff alleges Jackson and Smith were present during the pat frisk on June 26, 2014, and, at Turso's direction, served as lookouts for Argibay by "stand[ing] security guard" while Argibay repeatedly slammed plaintiff into a wall. (Am. Compl. at 7). Plaintiff further alleges

the beating "transpired in [Jackson and Smith's] physical presence," yet Jackson and Smith failed to stop or prevent it. (Id.).

Again assuming, for purposes of the instant motion, that plaintiff's allegations are true, Jackson and Smith's presence throughout the alleged beating, and their roles as lookouts while it occurred, adequately support their personal involvement. Cf. Bhuiyan v. Wright, 2009 WL 3123484, at *7 (N.D.N.Y. Sept. 29, 2009) ("The fact that defendant . . . was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault."); see Groves v. Davis, 2012 WL 651919, at *4 (N.D.N.Y. Feb. 28, 2012).

Thus, the Court declines to dismiss plaintiff's claims against Jackson and Smith for failure plausibly to allege their personal involvement.

V.     Failure to Intervene

Defendants argue plaintiff's failure to intervene claims against Jackson and Smith must be dismissed because they were "engaged in securing other inmates" when the beating allegedly occurred. (Def. Reply Br. at 3).

The Court disagrees.

"[T]he question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016). Because no single factor is dispositive, "[t]he essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." Id. at 107–08. "Whether an officer had sufficient time to intercede or was capable of preventing

the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citation omitted).

The amended complaint explicitly alleges Jackson and Smith stood near to and observed the beating while keeping watch for passers-by, and that Jackson and Smith "just stood idly while the plaintiff was being physically [abused] in their [presence]." (Pl. Opp. Br. at 11). Those allegations are enough to state a claim against Jackson and Smith for failure to intervene. See, e.g., Salgado v. NYS Dep't of Corr. & Cmty. Supervision, 2016 WL 6311296, at *12 (W.D.N.Y. Sept. 15, 2016) ("[P]laintiff's allegations that [a defendant] watched while plaintiff was being beaten and did nothing to stop the other officers are sufficient to state a claim for a constitutional violation."). Contrary to defendants' contention, the amended complaint's description of a pat frisk involving multiple prisoners does not preclude plaintiff's failure to intervene claim against Jackson and Smith.[5]

Accordingly, the Court declines to dismiss plaintiff's claims against Jackson and Smith for failure to intervene.

VI.     Conspiracy

Defendants argue plaintiff's conspiracy claim must be dismissed pursuant to the intracorporate conspiracy doctrine.

The Court disagrees.

---

[5]     Defendants argue "the duty [to intervene] does not extend when Officers are engaged in securing other inmates." (Def. Reply Br. at 3). Their lone supporting citation, Heyliger v. Krygier, 335 F. Supp. 3d 482 (W.D.N.Y. 2018), does not stand for the proposition asserted. See id. at 498 (finding no reasonable opportunity to intervene "[b]ased on the suddenness and brief duration of the claimed assault")). In any case, the amended complaint does not allege Jackson and Smith were busy frisking other inmates while the assault allegedly occurred.

To survive a motion to dismiss a conspiracy claim, a plaintiff must allege (i) "an agreement between two or more state actors or between a state actor and a private entity"; (ii) "to act in concert to inflict an unconstitutional injury"; and (iii) "an overt act done in furtherance of that goal[,] causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy . . . the pleadings must present facts tending to show agreement and concerted action." Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008) (internal quotation omitted) (alterations in original). "[C]onclusory allegations of a § 1983 conspiracy are insufficient." Pangburn v. Culbertson, 200 F.3d at 72 (internal quotation omitted).

"[U]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008)) (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)). However, "[a]n exception to the doctrine exists where a plaintiff alleges facts that tend to show the defendants were pursuing personal interests wholly separate and apart from the entity." Harris v. City of Newburgh, 2017 WL 4334141, at *8 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted). For that exception to apply, a plaintiff must plausibly allege the defendants "acted other than in the normal course of their corporate duties," id. (quoting Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir. 1976)), "maintain[ing] the pretense of serving the state while in fact pursuing their own ends to avoid liability," Alvarez v. City of New York, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012).

Here, plaintiff plausibly alleges defendants acted outside "the normal course of their corporate duties" by agreeing to use excessive force in retaliation for plaintiff's plan to grieve

Argibay, and then by falsifying reports and other documents to cover up the alleged beating.
Harris v. City of Newburgh, 2017 WL 4334141, at *8 (quoting Girard v. 94th St. & Fifth Ave.
Corp., 530 F.2d at 72). Employing excessive force and falsifying documents are not core
functions performed in the normal course of a correction officer's duties. Further, plaintiff
alleges a plausible "personal interest" for defendants' alleged conspiratorial conduct—covering
up their involvement in the alleged incident—plausibly indicating they acted in their personal
interests, not Downstate's or DOCCS's. Lewis v. Havernack, 2013 WL 1294606, at *13
(N.D.N.Y. Mar. 28, 2013).

Thus, accepting plaintiff's allegations as true for purposes of deciding this motion,
plaintiff adequately pleads defendants acted outside the scope of their employment and in their
own personal interest when they allegedly tried to cover up the beating, rendering the
intracorporate conspiracy doctrine inapplicable. See Lewis v. Havernack, 2013 WL 1294606, at
*13 (finding intracorporate conspiracy doctrine inapplicable because prison official defendants
allegedly covered up excessive force); Hill v. City of New York, 2005 WL 3591719, at *6
(E.D.N.Y. Dec. 30, 2005) (finding intracorporate conspiracy doctrine inapplicable because police
officer defendants allegedly covered up excessive force).

The Court therefore declines to dismiss plaintiff's conspiracy claims.

VII.    ADA Claims

Defendants argue plaintiff fails plausibly to allege a claim under the ADA.

The Court agrees.

To state an ADA claim, a plaintiff must adequately plead "(1) that he is a 'qualified
individual' with a disability; (2) that he was excluded from participation in a public entity's
services, programs or activities or was otherwise discriminated against by a public entity; and (3)

that such exclusion or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d 27, 34–35 (2d Cir. 2003). Importantly, plaintiff must allege his mistreatment "'was motivated by either discriminatory animus or ill will due to disability.'" Elbert v. N.Y. State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 594–95 (S.D.N.Y. 2010) (quoting Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 112 (2d Cir. 2001)).

Plaintiff fails to allege defendants discriminated against him because of his "short, deformed right arm with a drop wrist." (Am. Compl. at 9). Indeed, the amended complaint does not allege any defendant acted with "discriminatory animus or ill will due to" plaintiff's disability. Elbert v. N.Y. State Dep't of Corr. Servs., 751 F. Supp. 2d at 594–95 (quoting Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d at 112). Plaintiff merely asserts he was a disabled person when the incident occurred—not that he was attacked because of his disability.

Thus, plaintiff's ADA claims are dismissed.

VIII.  Access to Courts Claim

Liberally construed, the amended complaint asserts a claim against Argibay for denying plaintiff access to Downstate's law library in violation of plaintiff's First Amendment right to access the courts.

The Court dismisses that claim sua sponte.

To state a constitutional claim for denial of access to the courts, plaintiff must plausibly allege a defendant, acting deliberately or with malice, "took or was responsible for actions that hindered . . . plaintiff's efforts to pursue a legal claim," causing plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation and citations omitted).

The amended complaint fails adequately to plead plaintiff suffered an "actual injury." For example, plaintiff does not allege he was prevented from bringing a legal claim, or that any

existing legal claim would have succeeded but irreparably was harmed by Argibay's alleged

conduct. Because plaintiff does not allege Argibay's actions caused plaintiff actual injury,

plaintiff's denial of access to the courts claim is dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii);

see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

IX.     New York State Constitutional Claims

Defendants argue plaintiff's causes of action under the New York State Constitution must

be dismissed for failure to state a claim.

The Court agrees.

First, plaintiff invokes several sections of Article I of the New York State Constitution—

namely, provisions governing disenfranchisement violations, see N.Y. Const. Art. I § 1; the right

to petition the government, see id. § 9; equal protection, see id. § 11; and unlawful searches and

seizures, see id. § 12. The amended complaint plainly fails to allege any facts suggesting a

defendant may have violated these provisions.

Second, as for plaintiff's state-law claim for excessive force, because plaintiff "has stated

a claim for excessive force pursuant to § 1983, his claim for excessive force [cannot lie] under

the New York State Constitution." See Clayton v. City of Poughkeepsie, 2007 WL 2154196, at

*7 (S.D.N.Y. June 21, 2007).

The Court therefore dismisses plaintiff's New York State constitutional claims.

X.      Assault and Battery

The Court liberally construes the amended complaint as asserting state law claims for

assault and battery against defendants in their individual capacities.

The Court dismisses those claims sua sponte.

Section 24 of the New York Correction Law "confer[s] upon [DOCCS employees] an immunity from liability for activities that fall within the scope of the statute." Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996). Accordingly, "[c]ourts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." Davis v. McCready, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017).

Courts consider a variety of factors when determining a correction officer's scope of employment, including "the connection between the time, place and occasion for the act; . . . whether the act is one commonly done by any employee; the extent of the departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." Degrafinreid v. Ricks, 452 F. Supp. 2d 328, 332–33 (S.D.N.Y. 2006) (quoting Riviello v. Waldron, 47 N.Y. 2d 297, 303 (1979)). Moreover, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'" Degrafinreid v. Ricks, 452 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) (quoting Cepeda v. Coughlin, 128 A.D.2d 995, 996 (3d Dep't 1987)). Thus, "correction[] officers accused of using excessive force against inmates while transporting them [are] entitled to immunity under section 24 on the grounds that they were acting within the scope of their employment." Id. (citing Cepeda v. Coughlin, 128 A.D.2d at 996).

Here, defendants plainly were DOCCS employees performing their duties at Downstate when the alleged constitutional violations occurred. See, e.g., Heyliger v. Gebler, 496 F. Supp. 2d 250, 253 (W.D.N.Y. 2007). Section 24 of the Correction Law therefore shields defendants from plaintiff's state law claims against them in their personal capacities.

Accordingly, plaintiff's assault and battery claims are dismissed for failure to state a claim.  See 28 U.S.C. § 1915(e)(2)(B)(ii); see also Abbas v. Dixon, 480 F.3d at 639.

XI.     Negligent Infliction of Emotional Distress

Finally, because plaintiff's claims for negligent infliction of emotional distress are "premised on [defendants'] intentional conduct," those claims fail as a matter of law.  See Naccarato v. Scarselli, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000) (citations omitted); see also Mazurkiewicz v. N.Y.C. Transit Auth., 810 F. Supp. 563, 570–71 (S.D.N.Y. 1993) ("Plaintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent.").  The Court therefore dismisses this claim sua sponte.  See 28 U.S.C. § 1915(e)(2)(B)(ii); see also Abbas v. Dixon, 480 F.3d at 639.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The following claims shall proceed:

1.      Plaintiff's excessive force claim against C.O. Argibay.

2.      Plaintiff's failure to intervene claims against Sgt. Turso, C.O. Garcia, C.O. Smith, and C.O. Jackson.

3.      Plaintiff's conspiracy claims against Lt. Daniels, Lt. Coffey, Sgt. Turso, C.O. Argibay, C.O. Smith, C.O. Garcia, C.O. Jackson, and Correctional Nurse Nguyen.

4.      Plaintiff's state law intentional infliction of emotional distress claims against Lt. Daniels, Lt. Coffey, Sgt. Turso, C.O. Argibay, C.O. Smith, C.O. Garcia, C.O. Jackson, and Correctional Nurse Nguyen.

All other claims are dismissed.

The Clerk is instructed to (i) terminate the motion (Doc. #67), and (ii) terminate defendants Anthony J. Annucci, Karen Bellamy, and Ada Perez.

By April 2, 2019, the remaining defendants shall file an answer to the surviving claims in the amended complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 19, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge